294 P.2d 707

**K. E. BULLOCK and Mertilla J. Bullock, his wife; Bert K. Bullock and Marie Bullock, his wife; and Lee H. Bayliss and Irene W. Bayliss, his wife, Plaintiffs and Respondents,**

v.

**Joseph M. TRACY, as State Engineer of the State of Utah; Keith G. Morrow and Vivian Park Home Owners Association, successors of L. E. Eggertsen, Defendants and Appellants.**

No. 8318.

Supreme Court of Utah.

March 9, 1956.

E. R. Callister, Atty. Gen., Robert B. Porter, D. A. Skeen, Salt Lake City, George S. Ballif, Provo, for appellants.

Aldrich & Bullock, Provo, for respondents.

WADE, Justice.

Plaintiffs, respondents here, instituted this action as an appeal from the decision of the State Engineer approving defendants' application to appropriate the water of a spring area on the southeasterly side of Provo Canyon above Vivian Park. During 1914 and 1915 a water-works system was developed to appropriate the water of that spring area and since that time the inhabitants of that Park have used water from such spring area to satisfy their irrigation and culinary needs. Defendants, who represent the Home Owners' Association, who own homes on the south side of the Provo River in that Park, filed this application to appropriate .16 of a cubic foot per second of water from this area on August 9, 1951. The application describes three-fourths of this water as being used in this system and proposes to develop an additional one-fourth or .04 second foot in new water from this spring area. The application describes this as surface water but the applicants submitted with this application another document to the State Engineer's Office wherein this same water was described as underground water. The State Engineer returned the other document to the applicants upon his decision that this is surface water and it was not

introduced in evidence and it is not clear from the record that it was anything more than a notice of claim of the right to use underground water.[1]

The plaintiffs represent the property owners in Vivian Park north of the Provo River. They protested the approval of this application on the ground that this is underground water which has been developed since 1903 and prior to 1935, by the owners of the land on which it was developed by a beneficial use and that they have acquired the right to the use of one-fourth of the water which has been used in that water system. The State Engineer decided that this was surface water and approved the application. The district court on appeal reversed that decision holding that the water was percolating underground water and rejected the application. Applicants prosecute this appeal from that decision.

Two questions are raised by this appeal: 1. Is the District court's decision that the water being used in this system was underground percolating water prior to its development supported by the evidence? 2. Does the evidence require the approval of the application for the development of .04 of a cubic foot per second of new water? We will consider these questions in the order above stated.

Before considering those questions we note that this is not an action to adjudicate the rights of the parties to the use of this water. It is merely an appeal from the Engineer's decision and requires only the determination of whether the application should be approved or rejected. The Engineer in making that decision exercises an executive function, he only determines whether there is reason to believe from the evidence that there are unappropriated waters in the proposed source which can be appropriated to a beneficial use without impairing existing rights or interfering with a more beneficial use and whether the proposed plan is feasible and within the financial ability of the applicant.[2] Our decision has only the effect of authorizing or denying the applicant the right to proceed with his plan to appropriate the water the same as though it were made by the Engineer without an appeal.[3]

1. The evidence supports the decision of the District Court that the water from this spring area now being used in the Vivian Park Water System was underground percolating water prior to being developed, diverted and used in that system.

Before discussing the evidence we note certain definitions, rules of law and changes in concepts having a bearing on

1. See section 73–5–10, U.C.A.1953.

2. See sections 73–3–8, 14 and 15, U.C.A. 1953.

3. See In re Application 7600, 63 Utah 311, 225 P. 605, 607; Eardley v. Terry, 94 Utah 367, 374, 377, 77 P.2d 362, 365; Tanner v. Bacon, 103 Utah 494, 136 P.2d 957; Whitmore v. Murray, 107 Utah 445, 154 P.2d 748; Riordan v. Westwood, 115 Utah 215, 203 P.2d 922; United States v. District Court, Utah, 238 P.2d 1132, rehearing denied, Utah, 242 P.2d 774.

374

our problem. It is now well established that since 1903, the right to the use of the unappropriated public waters of this state can only be acquired by first filing an application therefor with the State Engineer's Office.[4] However, our concept of what constitutes public waters has been changed during 1935 and since then. Prior to that time underground percolating and diffused waters and the waters of artesian basins were considered a part of the soil and belonged to the owner thereof,[5] but since then all waters capable of being diverted and beneficially used without destroying the beneficial effect which they have in their natural state on the land where they appear are considered public waters, the right to the use of which cannot be acquired without first filing an application to appropriate in the State Engineer's Office.[6]

▇▇ Practically all the evidence indicates that prior to the development of this water system there was no flowing stream at the source of this water but only a wet place or spring area. It seems to have been very similar to the area considered in Riordan v. Westwood,[7] which we held would have been percolating underground water prior to 1935 and not subject to appropriation, but since that time we held it subject to appropriation. All the direct testimony of those who saw the place prior to the development of this water system so indicated and there was definite testimony that in developing the system tunneling and blasting were used to clean the sources out and produce running water. There was testimony that each of the springs show evidence of blasting even now. So we affirm the trial court's holding that the right to the use of this water which has been developed and used in this system was acquired by the owners of the ground where the source of the supply was located developing and diverting this water into their system and beneficially using it therein prior to 1935, and that no application to appropriate such water was necessary at that time to establish the right to the use of such waters.

▇▇ 2. The evidence requires the approval of the application to appropriate the .04 second foot of water which the application proposes to develop. All of the evidence definitely without dispute indicates that by tunneling and improving the diver-

4. See section 73–3–1, U.C.A.1953, Laws of Utah 1903, chapter 100, section 34; Deseret Live Stock Co. v. Hooppiania, 66 Utah 25, 239 P. 479; Adams v. Portage Irr. Co., 95 Utah 1, 72 P.2d 648; Smith v. Sanders, 112 Utah 517, 189 P.2d 701; Duchesne County v. Humphreys, 106 Utah 332, 148 P.2d 338; Riordan v. Westwood, 115 Utah 215, 203 P.2d 922; Hanson v. Salt Lake City, 115 Utah 404, 205 P.2d 255.

5. Fairfield Irrigation Co. v. Carson, Utah, 247 P.2d 1004; Hanson v. Salt Lake City, 115 Utah 404, 205 P.2d 255; Riordan v. Westwood, 115 Utah 215, 203 P.2d 922. and cases therein cited.

6. See that case cited in note 5 supra.

7. See note 5 above.

sion system the flow of water from these springs into the system can be greatly increased. The experts estimate this increase from 25 to 50 per cent. In his opening statement plaintiff's counsel said the flow "is now .16 of a second foot and there is more that can be developed and utilized." That is exactly what this application, in part, proposes to do. Plaintiffs seem to argue that because there is evidence which indicates that .16 of a second foot is now being utilized in this system, defendants' application to develop .04 new additional water should be denied. There is nothing to indicate that this additional water is not needed so this is no reason why this part of the application should not be approved. Nor is the further fact that the application proposes to appropriate some water which the right to the use thereof had already been perfected by a diligence use prior to the time when an application to appropriate such waters was required, nor the fact that the applicants presented another document to the State Engineer's Office for filing which assumed that this was underground water, any reason why this part of the application should be rejected. Here it is clearly indicated that there are unappropriated waters in these sources which can be appropriated to a beneficial use without impairing existing rights or interfering with a more beneficial use, and that the proposed plan is feasible and within the financial ability of the applicants. Under these circumstances the law requires that the application be approved.[8]

We affirm the trial court's decision rejecting the application to appropriate the waters which have already been appropriated to a beneficial use in this system and reverse its decision refusing to approve the application to develop new water from these sources.

Each side shall bear its own costs.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WORTHEN, JJ., concur.

---

8.  See 73-3-8, U.C.A.1953, and cases cited in note 3 supra.