355 P.2d 69

Don Mack DALTON, Plaintiff and Appellant,

v.

Richard D. WADLEY and Jessie R. Wadley; Joseph M. Tracy, as State Engineer of the State of Utah, Defendants and Respondents.

No. 9104.

Supreme Court of Utah.

Aug. 12, 1960.

Elias Hansen, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Robert B. Porter, Jr., Salt Lake City, Harvard R. Hinton, Lehi, Glenn M. Acomb, Salt Lake City, for respondents.

McDONOUGH, Justice.

The plaintiff and the defendants live and own property just north of Pleasant Grove, Utah. A spring of water known as Wadley Spring is located upon the defendants' land. On September 9, 1953, the plaintiff filed an application with the State Engineer for one second foot of water from Wadley Spring, to be used for culinary purposes and incidental stock watering for 50 homes to be constructed, and also for four homes already furnished with such water. On Februar 3, 1956, the defendants Wadley filed with the State Engineer a statement of Water Users Claim to Diligence Rights to the water of this spring, claiming such use to these quantities of water: .25 c. f. s. (cubic feet per second) for domestic and irrigation uses during the irrigation season from April 1 to October 31 of each year; and in addition thereto, for the entire year, .05 c. f. s. for domestic uses and .05 c. f. s. for stock watering purposes. The defendants also filed objection to the plaintiff's application above referred to. Upon issue joined and a hearing held, the State Engineer rejected the plaintiff's application, who then sought plenary review of the State Engineer's decision as provided in Sec. 73–3–14, U.C.A. 1953.[1]

The parties stipulated that the trial court could not only determine whether the application should be approved, but it could fix the amount of water, if any, that plaintiff could acquire under his application. The lower court quieted title in the water flowing from the spring to .101 second foot in the following proportions: "32/47 thereof to Richard D. Wadley, to Jessie. R. Wadley 12/47 thereof, and plaintiff Don

1. "In any case where a decision of the state engineer is involved any person aggrieved by such decision may within sixty days after notice thereof bring a civil action in the district court for a plenary review thereof."

Mack Dalton to ¾₇ thereof," which was in proportion to the land each had acquired through the Wadleys' father, who homesteaded the land.

■ Plaintiff Dalton's application for additional water arising in the area of Wadley Spring was approved only for .0109 second foot. From this determination he appeals. Under recognized rules we review the evidence in the light most favorable to the trial court's findings.[2]

The defendant, Richard D. Wadley, testified that in about 1872, when his father located on the land, "it was such a little spring, it came down the hill and all he (Wadley's father) could do with it was water the garden." From 1872 until about 1935 the defendant tried to develop a greater flow of water. They succeeded in doing so by digging a series of tunnels into the hill in order to discover the source of the spring. The defendant finally managed to dig back into the hill about 200 feet to get nearer the source of the water. The water is held back by a limestone formation and escapes toward the spring from a crack therein. This is about 20 feet away from where defendant's father had originally tapped the spring. All of these tunnels have caved in and are now inaccessible. The defendant managed to put a pipe into the limestone and seal it in so that at the present time the water from the spring comes out of this pipe and except for water that seeps out around the pipe is the only source of flow from the spring. The Wadleys have used the water since they first settled upon the land. In 1920 they began to rent water to their neighbors in Manila, Utah County. By 1953 about 42 connections in Manila had been made to the Wadley Spring. The people of Manila used the water from the spring as a primary source until 1956 when they dug a well for their future culinary water needs. Since that time the people of Manila have used the spring as a secondary source of supply only.

The pipe placed in the spring extends from the spring to a settling tank or concrete headhouse, from which various pipes go to the outlets for the house, and for stockwatering. The flow of the spring through the pipe is continuous and quite uniform throughout the year, which flow is approximately .101 second foot of water. There is an overflow at the top of the settling tank and the water that does not leave the tank through pipes to homes or other outlets overflows and runs into a reservoir.

■ As was mentioned above, water leaks out around the pipe and there are places where it runs out onto the surface of the land, and has done so for several years. This water amounts to about .0109 second foot, and has not been placed to any

2. Buehner Block Co. v. Glezos, Utah, 6 Utah 2d 226, 310 P.2d 517.

beneficial use and is therefore subject to appropriation.

The plaintiff contends (a) that he is entitled to the use of the water that is not being used for culinary purposes from Wadley Spring from October 31 to April 1 of each succeeding year as there are no present rights to it and it is subject to appropriation, and (b) that he is entitled to all the water, up to one second foot, that he may develop from the spring area around Wadley Spring, insofar as it does not interfere with the existing rights to the spring water.

▇▇▇ (a) Since 1903 it has been the law of this state that in order to appropriate surface water or underground water in defined channels, it has been necessary to file an application with the State Engineer and be approved by him. Two cases decided in 1935 held that all waters in the state, including diffused or percolating underground waters, are the property of the public and subject to appropriation.[3] The following session of the legislature amended the existing statute to provide:

"All waters in this state, whether above or under the ground are hereby declared to be the property of the pub-

lic, subject to all existing rights to the use thereof." [4]

Under the circumstances shown here where the water user tunneled into the area surrounding the spring for the purpose of developing water, the trial court correctly regarded it as underground water;[5] and this having been done prior to 1935, no application to appropriate that water was necessary.

▇▇▇ The point raised that the defendants were not using the water themselves and had abandoned it has no validity. It was leased to the Manila Water Users Association, and use by the lessee protects their water rights just as if the defendants were personally using the water. Once water rights are established, the burden is upon the person claiming abandonment to demonstrate that the water user has in fact intentionally abandoned the water,[6] which burden was not met.

▇▇▇ As to Point (b), relating to plaintiff's claim that he is entitled to develop all unappropriated water around the spring area: the general rule is that if the evidence supports a finding that there is unappropriated water in the source, the application to appropriate must be granted.[7] On

3. Wrathall v. Johnson, 86 Utah 50, 40 P. 2d 755; Justesen v. Olsen, 86 Utah 158, 40 P.2d 802.
4. Utah Code Annotated, 1953, Sec. 73-1-1.

5. Bullock v. Tracy, 4 Utah 2d 370, 294 P. 2d 707.
6. Wellsville East Field Irr. Co. v. Lindsay Co., 104 Utah 448, 137 P.2d 634.
7. Little Cottonwood Water Co. v. Kimball, 76 Utah 243, 289 P. 116.

the other hand, if the evidence supports the conclusion that there is no unappropriated water in the source, the engineer's rejection of the application should not be disturbed.[8] Upon the basis of the record here, it is our conclusion that there is ample evidence in the record to support the determination of the trial court that the .0109 c. f. s. of water above referred to is available for appropriation, but that there is no other water available to be developed from the source in question.

Another point raised relates to the plaintiff's right to acquire a right-of-way across the defendant's land in order to use his water. He may have such right-of-way if the defendant is justly compensated for the taking;[9] and so long as he does not interfere with the rights and use of the defendant's water.

The plaintiff has had full opportunity to present his contentions and has had a trial of the issues raised. All presumptions are in favor of the judgment.[10] No prejudicial error having been shown, the judgment is

Affirmed. Costs to defendants.

CROCKETT, C. J., and WADE, HENRIOD and CALLISTER, JJ., concur.

8. Tanner v. Bacon, 103 Utah 494, 136 P. 2d 957; Little Cottonwood Water Co. v. Kimball, supra.

9. Sec. 73-1-6, Utah Code Annotated 1953.
10. Joseph v. W. H. Groves Latter-Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935.