11 Utah 2d 77 (1960)
355 P.2d 64
IN THE MATTER OF THE GENERAL DETERMINATION OF RIGHTS TO THE USE OF ALL WATER, BOTH SURFACE AND UNDERGROUND, IN THE ESCALANTE VALLEY DRAINAGE AREA. IN RE WATER USER'S CLAIM NO. 1420, UNDERGROUND WATER CLAIM NO. 10150, CLAIMANT LEO E. MAYER.
LEO E. MAYER, PLAINTIFF AND APPELLANT,
v.
WAYNE D. CRIDDLE, STATE ENGINEER OF THE STATE OF UTAH, DEFENDANT AND RESPONDENT.
No. 9146.
Supreme Court of Utah.
August 25, 1960.
Sam Cline, Cline, Wilson, & Cline, Milford, for appellant.
Walter L. Budge, Atty. Gen., for respondent.
WADE, Justice.
The trial court determined that the plaintiff is entitled to the use of water from a well located upon his land for the irrigation of five acres of cultivated land. From that determination the plaintiff appeals.
In 1928, Fred W. O'Leary, the plaintiff's predecessor in interest, commenced the irrigation of his land from a well located on the land. In 1936 O'Leary filed a notice of claim to this ground water with the state engineer. In this notice of water user's claim he stated that the water from the well was used upon five acres of ground.
A proceeding was initiated as a general adjudication of all of the rights to the use of water in the Escalante Valley Drainage Area in Utah, which includes the area wherein the plaintiff's land is located. After complying with the provisions of Chapter 4 of Title 73, Utah Code Annotated, 1953,[1] and after a hydrographic survey[2] of that area, the state engineer served and filed in the district court his proposed determination of water in said area. When the plaintiff learned that his water rights were to be limited to use for irrigation of five acres (15 acre feet of water per year)[3] by the proposed determination, he filed an amended underground water claim and an amended water users right. In these amended claims the plaintiff states that water from the well had been used for irrigating 35 acres of pasture land in addition to the five acres previously claimed. During the trial the plaintiff and O'Leary testified that water from the well had been used upon five acres of land that had been cultivated and on about 35 acres of pasture land, and that the ditches used to irrigate this land are still visible. O'Leary claims that when he filled out the original form he believed the amount of water used in irrigation meant the amount used in irrigating cultivated crops and not pasture land.
The state engineer introduced the proposed determination of water rights as proof of the position that only water for irrigation of five acres should be allowed. Upon agreement of counsel the court viewed the land and the irrigation system. Judgment was entered affirming the determination of the state engineer.
Plaintiff claims that his testimony and the testimony of O'Leary are uncontroverted and that as such they cannot be arbitrarily disregarded by the trial court when it is making its determination. The defendant introduced the proposed determination into evidence. Such record of the state engineer is a public record.[4] As stated, supra, this engineer's determination is not an arbitrary thing but is based upon many things, including an extensive survey of the area and its water systems and ditches. Such public records are admissible in evidence as indicated by the following:
"It is a well recognized general rule that official records and written reports of a public nature which public officers are required, either by statute or by the nature of the duties of their office, to keep of transactions occurring in the course of their public service, made either by the officers themselves or under their supervision, are ordinarily admissible in evidence as proof of the facts recorded therein, so far as they are relevant and material to the particular inquiry, although the entries have not been testified to by the persons who actually made them and although they have, therefore, not been offered for cross examination."[5]
The report of the state engineer in this determination is competent and admissible evidence.[6]
With such conflicting evidence before it, the court, at the suggestion and agreement of counsel, agreed to view the premises in question. It was stipulated by counsel for both parties that the court should view the premises in connection with the evidence. It appears from the record that the judge did not intend to view the premises to supply evidence, but merely to aid in the interpretation of the evidence already before the court. This court is reticent to upset a finding of a lower court where a view by the trial judge has been had.[7]
The use of water for the irrigation of pasture land, as counsel agree, constitutes a beneficial use of water.
Since plaintiff is claiming affirmative relief he has the burden of persuading or convincing the trial court that his claim is valid. The defendant does not have to produce substantial evidence or any evidence to support a finding in its favor.[8] The trial court having heard the evidence and viewed the scene in question was in a better position to correctly determine the facts than we are, so in accordance with the rule in equity cases we will not disturb its findings unless we conclude that they are contrary to the clear preponderance of the evidence.[9] After a careful consideration of the evidence we conclude that the judgment of the trial court should be affirmed.
No costs awarded.
CROCKETT, C.J., and HENRIOD and CALLISTER, JJ., concur.
McDONOUGH, J., concurs in the result.
NOTES
[1] In order to make such a determination the state engineer has certain formalities that he must undertake: (1) Must give notice of the undertaking (2) issue summons and file water users' claims, (3) examine court decrees relating to said water rights, (4) search the files of his office and consider the water users' claims filed, (5) complete a hydrographic survey, and (6) give notice to the court that he is ready to make his proposed determination.
[2] A hydrographic survey is a very extensive survey made by qualified engineers, the end product of which is a map illustrating and defining all the water features of a particular area, including streams, springs, wells, or other water sources; the distribution systems including ditches, pipelines, or other means of conveyance; and the lands upon which the water is used in the area surveyed.
[3] At the time of this case in the determination, in the instance of irrigation the requirement of the land was considered to be 3 acre feet per acre per calendar year, regardless of the source of supply. Since the determination of this matter by the state engineer, it has been considered that the requirement should be 4 acre feet and all such determinations have been raised to comply with this latter amount.
[4] 73-2-11, Utah Code Annotated, 1953.
[5] 20 Am.Jur., Sec. 1023, page 861.
[6] Pacific Livestock Co. v. Oregon Water Board, 241 U.S. 440, at page 453, 36 S.Ct. 637, 60 L.Ed. 1084.
[7] Weber Basin Water Conservancy District v. Moore, 2 Utah 2d 254, 272 P.2d 176.
[8] In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682.
[9] Silver King Consol. Mining Co. v. Sutton, et al., 85 Utah 297, 39 P.2d 682.