363 P.2d 82

**Paul L. SHIELDS, Plaintiff and Appellant,**

v.

**DRY CREEK IRRIGATION COMPANY, a corporation, and Wayne D. Criddle, State Engineer, Defendants and Respondents.**

**No. 9425.**

Supreme Court of Utah.

June 28, 1961.

---

3.  41–2–1(i), U.C.A.1953.
4.  41–6–7(a), U.C.A.1953.

5.  41–11–49(c), U.C.A.1953.

Marr, Wilkins & Cannon, Moreton, Christensen & Christensen, Salt Lake City, for appellant.

James E. Faust and J. Lambert Gibson, Salt Lake City, Walter L. Budge, Atty. Gen., Richard Boyle, Dallin W. Jensen, Assts. Atty. Gen., for respondent.

CROCKETT, Justice.

Plaintiff appeals from a decision of the district court which sustained the State Engineer's rejection of his application to appropriate water.

Prior to 1903 a number of families had settled in the southeast part of Salt Lake County near what is now Holladay, and by putting the water to a beneficial use, acquired rights to use the water from Dry Creek Spring.[1] It was used mainly for irrigation; however, six families had diverted approximately one-third of a second foot of the water into a "house use" stream which supplied their culinary water. In 1904 these six families installed a pipe to carry this water to their homes. Later the defendant, Dry Creek Irrigation Company, replaced this pipe with a larger one.

At the time the defendant irrigation company was organized in 1906 the various appropriators conveyed to it their interests in the water from the spring "except that the said [six users of culinary water referred to above] hereby severally reserve the right to use a house stream out of said spring, as the same is now being used and for a great many years has been used by them." The defendant's articles of incorporation contained a correlative provision.

Some time later the six families appear to have obtained their culinary water from another source. It is not disputed that the Dry Creek water has not been used by them for many years, but has been used by the defendant company for irrigation along with the other water from the spring.

In July, 1958, plaintiff filed an application to appropriate one-third of a second foot of the water of Dry Creek based on the theory that that amount of the water had been reserved by the six families for culinary use, and because of nonuse it had reverted to the public and was available for appropriation.

The State Engineer denied plaintiff's application on the ground that there was no unappropriated water from the spring unless it was as a result of nonuse or abandonment; and he ruled that the question as to whether water once appropriated had reverted to the public for nonuse or abandonment required legal determinations which are generally beyond the jurisdiction of his office.

This action was brought, as authorized by Section 73–3–14, U.C.A.1953, in the district court to review the Engineer's rejection of the application. At the close of the plaintiff's evidence the court granted the defendant's Motion To Dismiss on the ground that the plaintiff had failed to show a feasible plan for the diversion of water, and that he failed to meet these requirements of our statute that:

1. Prior to the 1903 water filing act (now Sec. 73–3–1, U.C.A.1953), rights to use water were acquired by putting it to a beneficial use.

"(1) There is unappropriated water in the proposed source.

"(2) The proposed use will not impair existing rights or interfere with the more beneficial use of the water.

"(3) The proposed plan is physically and economically feasible * * * and would not prove detrimental to the public welfare; * * *

"(4) The applicant has the financial ability to complete the proposed works and the application was filed in good faith and not for purposes of speculation or monopoly." [2]

Plaintiff here contends that the district court review is limited to the issues as determined by the State Engineer; that the court should not have decided the case on the issue of feasibility since the Engineer had not rested his rejection of plaintiff's claim on that particular issue; and that no such issue was expressly raised by defendant's pleadings.

The only question of significance on this appeal is the scope of the district court's review of the decision of the State Engineer in such a case. The primary source of inquiry on that problem is the statutes authorizing such review. Section 73–3–14

provides that any person aggrieved by a decision of the State Engineer may "bring a civil action in the district court for *plenary* review thereof." And the following section, 73–3–15 provides: "The hearing in the district court shall proceed as a *trial de novo* and shall be tried to the court as other equitable actions." (Emphasis added.)

Formerly our statute authorizing the district court to review decisions of the State Engineer referred to "appeals" from such decisions.[3] Nevertheless, that statute was interpreted to mean a review de novo of the application as presented to the Engineer.[4] The fact that the statute was amended to speak of "plenary review" and "trial de novo" seems to clearly indicate legislative approval of and accord with the above stated rule. It is now so well settled as to not admit of argument that in such proceedings the "trial de novo" specified in the statute comprehends a trial of all pertinent issues to determine whether the applicant has met his burden of showing that the necessary conditions exist to warrant approval of his application.[5] In East Bench Irrigation Co. v. State, this court remarked that it meant a trial on all the issues

2. See Section 73–3–8, U.C.A.1953.
3. L.1919, Chapter 67, Section 54.
4. In re Application 7600 to Appropriate 30 Second Feet of Water, 63 Utah 311, 225 P. 605.
5. United States v. District Court, 121 Utah 1, 238 P.2d 1132; Bullock v. Tracy, 4 Utah 2d 370, 294 P.2d 707.

which *could have been raised* under the application.[6]

■ We are not persuaded by the argument that the specific issue of feasibility had not been raised by defendant's pleadings. The question whether a proposed water diversion is feasible, stated in general language, can involve more than physics and economics: it can reasonably be understood as also encompassing the questions as to whether the other statutory requirements set forth above have been met. The plaintiff is seeking affirmative relief and therefore has the burden of showing that he is entitled to it. The statute expressly provides that unless he proves the requisites therein set forth, the application shall be rejected.[7] It is not necessary that a denial be pleaded in order to put him to the proof required by law. It was both the prerogative and the duty of the trial court to hear all pertinent evidence to determine whether he had established such requirements. Since the proceeding in the district court is equitable in nature, the finding that the applicant failed to show a feasible plan for the diversion of water could only be reversed if the evidence clearly preponderated against it,[8] a circumstance which is not demonstrated from the record before us.

6. 5 Utah 2d 235, 300 P.2d 603.
7. Sec. 73-3-8, U.C.A.1953.
8. See In re Escalante Valley Drainage Area, 11 Utah 2d 77, 355 P.2d 64; Drainage Area of Bear River, 12 Utah

Affirmed. Costs to defendants (respondents).

WADE, C. J., and HENRIOD, McDONOUGH, and CALLISTER, JJ., concur.

2d 1, 361 P.2d 407; as to review in equity generally see Nokes v. Continental Mining & Milling Co., 6 Utah 2d 177, 308 P.2d 954.