2016 UT App 220

## THE UTAH COURT OF APPEALS

RANDALL D. BRESEE AND DERRY BRESEE,
Appellants,
*v.*
LYLE C. BARTON AND VERONICA L. BARTON,
Appellees.

Opinion
No. 20140565-CA
Filed November 3, 2016

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 120500092

Matthew D. Carling, Attorney for Appellants

Todd Macfarlane, Attorney for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
KATE A. TOOMEY concurred. JUDGE GREGORY K. ORME concurred
in part and dissented in part, with opinion.

ROTH, Judge:

¶1     Randall D. Bresee and Derry Bresee (collectively, the
Bresees) appeal several rulings made by the district court in
favor of Lyle C. Barton and Veronica D. Barton (collectively, the
Bartons). We affirm but remand for the narrow purpose of
determining the Bartons' attorney fees on appeal.

BACKGROUND

¶2     This case involves water and boundary disputes between
the Bresees and the Bartons. The Bresees purchased a parcel of
land in 2009. Their parcel is surrounded on three sides by the
Bartons' land. When the Bresees purchased their parcel, the deed
included a fifty-foot ingress, egress, and utilities easement over

the Bartons' land that allowed the Bresees access to their property. The deed did not mention any other easement upon or interest in the Bartons' land.

¶3 The Bartons have two sources of irrigation water: water shares they own in the Parowan Reservoir Company and water they pump from an irrigation well located on their property. They convey the water from both sources to their cultivated land through a buried mainline running through their property. During times when the reservoir water is sparse, the Bartons use a valve to switch the mainline to deliver water from the private well.

¶4 The Bresees own eleven shares in the Parowan Reservoir Company. At the time of the dispute, the Bresees did not have any way to access their reservoir shares. Before the Bresees acquired their property, the Bartons had entered into a series of exchange-of-use agreements with the Bresees' predecessors in interest whereby, in exchange for permitting the Bartons to farm a portion of their property, the Bartons allowed the Bresees' predecessors to access the water shares owned by the predecessors through the Bartons' mainline. In 2009, shortly after the Bresees purchased the property, Mr. Barton approached Mr. Bresee about entering into a similar exchange-of-use agreement. The Bresees initially agreed to this arrangement. However, a dispute arose between the parties that led to the termination of the agreement before the 2012 growing season.

¶5 In April 2012, Mr. Bresee entered the Bartons' property without permission to divert water from the Bartons' mainline to his property. He turned off the water, dug a trench with a backhoe, and proceeded to install a T-connection into the mainline to connect a pipeline, which he ran back to his own property through the new trench. The Bartons soon discovered the entry onto their property, removed the T-connection, and restored the property to its prior condition.

¶6 Shortly thereafter, the Bresees filed a complaint alleging, among other things, that an easement existed for water transport to their property in and from the Bartons' existing irrigation mainline on various theories, including eminent domain. The Bresees also sought to quiet title in an approximately nine-foot strip of land along their western border. The Bresees claimed a right to the strip of land under theories of adverse possession and boundary by acquiescence.

¶7 In early June 2012, the district court notified the parties of the discovery completion deadlines. In particular, it noted that fact discovery was to be completed by November 16, 2012. However, on June 14, 2012, at a preliminary evidentiary hearing, the Bartons sought leave to file a counterclaim. The court ordered the parties to file any amended pleadings or counterclaims no later than twenty days from the date of that hearing. Although the Bresees' counsel suggested to the court that the discovery schedule should be extended accordingly, the court did not alter the November 16, 2012 discovery deadline. The Bartons filed their counterclaims before the twenty-day deadline requesting, inter alia, a declaratory judgment that the Bresees held no interest in either the Bartons' mainline or their irrigation well.

¶8 On September 9, 2012, the Bartons filed a motion for summary judgment (the MSJ) seeking dismissal of all of the Bresees' original claims. The Bresees later admitted that at the time the MSJ was filed, a little more than a month before the discovery deadline, they had not yet conducted any discovery. The court set a hearing on the MSJ for 9:00 a.m. on February 14, 2013, and notified the parties. The Bresees' counsel mistakenly calendared the hearing for 1:00 p.m. instead of 9:00 a.m. on the same day. As a result of counsel's calendaring error, neither he nor the Bresees appeared for the hearing. Neither the Bartons' counsel nor the court attempted to contact the Bresees' counsel to inquire as to his whereabouts. After confirming that notice of the hearing had been sent out, the court heard the Bartons'

arguments despite the Bresees absence and orally ruled that the Bartons were entitled to summary judgment in their favor on all claims in the Bresees' complaint, reserving the Bartons' request for bad-faith attorney fees for later decision.

¶9     After the MSJ hearing, the Bresees moved for a new trial under rule 59 of the Utah Rules of Civil Procedure. They contended that relief was warranted because their counsel's "mistake of writing down the wrong time for the hearing" was an inadvertent "accident" under rule 59(a)(3) and that they "suffered prejudice in not being afforded an opportunity to be present at a meritorious stage of the action which they brought." The Bresees also argued that relief was warranted under rule 59(a)(1) due to an "irregularity in the proceedings" because neither the court nor opposing counsel extended the "professional courtesy" to contact the Bresees' counsel "when it was clear that he had not appeared . . . for the hearing" and that, as a result, "the Bresees were deprived of the ability to present oral arguments regarding the issues contained in the [MSJ]" and were therefore "prevented from meaningfully being heard on the matter." Additionally, the Bresees contended that questions of material fact warranted reversal and a new summary judgment proceeding. The district court denied the Bresees' motion on the grounds that, even assuming rule 59 subsections (a)(1) and (a)(3) applied to the circumstances, the Bresees suffered no prejudice by their absence, because they had "ample opportunity to put their arguments before the court in written form, and have in fact taken full advantage of such opportunity." The court granted the MSJ in the same order, memorializing its earlier ruling from the bench.

¶10    On December 7, 2012, a couple of months prior to the MSJ hearing, but four months after the pleading amendment cut-off date, the Bresees filed a motion to amend their complaint to assert new causes of action, including easement by necessity, easement by implication, trespass, negligence, and negligent and intentional infliction of emotional distress. The Bartons objected.

At the time of the MSJ hearing, the Bresees had not yet submitted the motion to amend for decision and the district court had not ruled on it. The Bresees did not request a ruling on their motion to amend until a hearing on November 4, 2013, nearly a year after it was filed and almost nine months after the summary judgment ruling. About a month later, the court heard arguments from both parties regarding the motion to amend and ultimately denied the motion.

¶11 The Bartons' counterclaims were resolved in a bench trial on January 9, 2014. The district court determined that the Bresees had no easement to access the Bartons' mainline and consequently found in the Bartons' favor on their claims for trespass and punitive damages, which both arose from the Bresees' incursion onto the Bartons' property to hook into the Bartons' mainline.[1] The court also ruled that the Bartons owned the narrow nine-foot strip of land that the Bresees had claimed was theirs and that the Bresees had no basis for claiming an interest in it. Finally, the court ordered the Bresees to pay the Bartons' attorney fees under the bad-faith attorney fee statute,

---

1. In their counterclaim, the Bartons also sought punitive damages for other conduct that the Bresees had engaged in as part of the larger conflict between the parties. In particular, the Bartons sought damages for the Bresees' repeated failure to close a set of gates located on the access easement on the Bartons' property despite "numerous requests by" the Bartons that they do so. The failure to close the gates led to the Bartons' livestock escaping onto the road bordering the properties. More than once, the Bartons called the police regarding the gates, and on one occasion, Mr. Bresee informed the police that "he would not close the gate and that he was [leaving the gates open] out of spite." The court concluded that the Bresees' conduct on this issue was willful and malicious, but it did not award punitive damages, because the Bartons did not present evidence regarding the actual damages they suffered.

Utah Code section 78B-5-825, for fees incurred up to the date of the court's ruling on the MSJ. The district court determined that the Bresees' claims were without merit, because they "clearly [lacked a] legal basis for recovery." The court further found that the Bresees' claims were asserted in bad faith because the Bresees "did not have [an] honest belief in the propriety of instituting this litigation against [the Bartons]." (Citation and internal quotation marks omitted.) The court denied the Bartons' other counterclaims—private nuisance, destruction of property, intentional interference with economic relations, and negligence—and declined to award the Bartons further attorney fees for prosecuting their counterclaim.

¶12     The Bresees appeal the district court's grant of summary judgment, the denial of their motion to amend, and the award of bad-faith attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶13     The Bresees first argue that the district court erred in granting summary judgment in favor of the Bartons. "We review summary judgments for correctness, giving no deference to the [district] court's decision . . . ." *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56. They also argue that the district court erred in denying their rule 59 motion for a new trial following the MSJ hearing. "A [district] court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion," *Clayton v. Ford Motor Co.*, 2009 UT App 154, ¶ 5, 214 P.3d 865, and "[w]e will reverse a district court's ruling on a motion for a new trial only if there is no reasonable basis for the decision," *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 21, 309 P.3d 201 (citation and internal quotation marks omitted).

¶14     The Bresees next argue that the district court erred in denying the motion to amend their complaint. "'The granting or denial of leave to amend a pleading is within the broad discretion of the [district] court, and we will not disturb [the

district court's decision] absent a showing of an abuse of that discretion.'" *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 41, 87 P.3d 734 (quoting *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 31, 84 P.3d 1154).

¶15   Finally, the Bresees argue that the district court erred in awarding the Bartons attorney fees on the basis of the Bresees' bad faith. The Utah Code requires a court to award reasonable attorney fees in a civil action to the prevailing party "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). "The 'without merit' determination is a question of law, and therefore we review it for correctness." *Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct. App. 1991). The bad-faith determination "is a question of fact" and is therefore reviewed by this court for clear error. *Id.* at 204.

ANALYSIS

I. Summary Judgment

¶16   The Bresees make two arguments with regard to the district court's summary judgment decision. First, they argue that, notwithstanding their failure to appear at the MSJ hearing, the district court should not have granted the motion without first allowing them an opportunity to present oral argument. Second, they argue that the MSJ should not have been granted, because genuine issues of material fact existed and the Bartons were not entitled to judgment as a matter of law. We are not persuaded that the district court erred.

A.     Absence from the Summary Judgment Hearing

¶17   The Bresees argue that the district court erred when it granted summary judgment without first having heard oral argument from them. Specifically, they seem to contend that the court should have contacted their counsel to inquire about his

absence or should have rescheduled the hearing so that the Bresees' arguments could be considered alongside the Bartons'. They claim that the court "specifically held [their] silence occurring from nonattendance . . . against them," "relied entirely upon the Bartons' arguments," and "refused to consider" their opposition to the MSJ. The Bresees also contend that, as a result of the court's decision to proceed with the hearing in their absence, they were "unable to reaffirm [their] dispute with [the] facts" that the Bartons had asserted in support of the MSJ. They contend that the district court erred in denying their motion for a new trial for essentially the same reasons.

¶18    In essence, the Bresees argue that they were not afforded due process—the right to be heard—because they were not present at the MSJ hearing. The Utah Supreme Court has stated that "at its core, the [procedural] due process guarantee is twofold—reasonable notice and an opportunity to be heard." *In re Adoption of B.Y.*, 2015 UT 67, ¶ 16, 356 P.3d 1215. This requires that a party "'in any proceeding which is to be accorded finality [must be provided] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 10, 100 P.3d 1211 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

¶19    The Bresees concede that they received proper notice of the MSJ hearing.[2] Thus, the Bresees must demonstrate that they

---

2. The Bresees contend that at the time of the 9:00 a.m. hearing, their counsel was "in his office only three (3) minutes from the courthouse and was available to have appeared," but that "he received no courtesy call from opposing counsel nor the court personnel respecting this oversight." But the Bresees do not argue that the court or opposing counsel was required to call him or that the district court abused its discretion by failing to

(continued…)

suffered a due process violation even though they received notice of the time and place of the hearing. In other words, the Bresees must show that, despite having been notified, their absence at the hearing rendered them without "an opportunity to present" their case. *Cf. id.* (citation and internal quotation marks omitted). They have not done so. The district court denied the Bresees' rule 59 motion for a new trial because it determined that, even if the Bresees' counsel had mistakenly miscalendared the time of the hearing or their absence amounted to some irregularity in the proceeding, the Bresees nonetheless "had ample opportunity to put their arguments before the court in written form, and ha[d] in fact taken full advantage of such opportunity." The record supports the district court's assessment. Even though the Bresees were not present for the MSJ hearing, they nonetheless received an adequate opportunity to be "heard" through their written motions and briefing. Indeed, by the time of the hearing, the Bresees had fully briefed their opposition to the MSJ, had provided their own affidavit to support a number of factual assertions, and had filed motions to strike every affidavit that accompanied both the Bartons' initial memorandum in support of the MSJ and the Bartons' reply to the Bresees' opposition memorandum. In addition, the Bresees provided the district court another opportunity to consider their arguments by filing a rule 59 motion after the missed hearing in which they argued not only that their absence from the MSJ hearing was a basis for a new proceeding, but again presented to the district court, in writing, the substance of their opposition to the Bartons' MSJ.

---

(…continued)
do so. And they cite no law or authority suggesting that either opposing counsel or court personnel are obligated to provide a "courtesy call" when counsel fails to appear for a hearing. Accordingly, we decline to address the issue further.

¶20   On appeal, the Bresees have not articulated any specific argument or factual dispute that they did not have the opportunity to present to the district court due to their absence from the hearing. They assert that they were not "able to reply to the court's concerns regarding [the Bartons'] claim of 'considerable interference'" (a claim we discuss in detail below, *see infra* Part I.B), because they were "unable to reaffirm [their] dispute with [the pertinent] facts" at the hearing. But an inability to "reaffirm" disputed facts suggests that the Bresees had already included their factual disputes in their briefing to the district court before the hearing. And, in any event, an inability to verbally "reply" to a claim in a hearing hardly seems to rise to the level of a due process violation where the Bresees took advantage of the opportunity—both before and after the hearing—to brief the district court regarding their position on the disputed issues. Further, other than conclusory allegations, the Bresees offer no support for their contention that the district court refused to consider their opposition on its merits because of their absence from the hearing.[3] *See* Utah R. App. P. 24(a)(9).

---

3. The Bresees also argue that it was procedural error to grant summary judgment when a motion to amend was still pending and discovery had not yet closed. However, the Bresees do not support these arguments with reasoned analysis; they simply cite several ostensibly pertinent cases and then state that the holdings of those cases support a conclusion that the summary judgment in this case was improper. Such an approach cannot satisfy the burden of persuasion. *See* Utah R. App. P. 24(a)(9); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) ("Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority. We have previously stated that this court is not a depository in which the appealing party may dump the burden of argument and research." (citation and internal quotation marks omitted)).

To the contrary, the district court's written decision on the MSJ indicates that it considered the arguments of both parties.

B.      The Summary Judgment Decision

¶21     The Bresees argue that the district court erred in granting summary judgment on their irrigation easement claim because "disputed material facts existed" and because there was "record evidence"—evidence they characterize as "undisputed"—that contradicted the Bartons' considerable interference contention.

¶22     In Utah, a person may condemn a "right of way" across land for water and irrigation purposes:

> Any person shall have a right of way across and upon public, private, and corporate lands, or other rights of way, for the construction, maintenance, repair and use of all necessary reservoirs, dams, water gates, canals, ditches, flumes, tunnels, pipelines and areas for setting up pumps and pumping machinery or other means of securing, storing, replacing and conveying water for domestic, culinary, industrial and irrigation purposes or for any necessary public use . . . upon payment of just compensation therefor, but such right of way shall in all cases be exercised in a manner not unnecessarily to impair the practical use of any other right of way, highway, or public or private road, or to injure any public or private property.

Utah Code Ann. § 73-1-6 (LexisNexis 2012). The Utah Supreme Court has interpreted this provision to mean that a plaintiff has a "right to acquire a right-of-way across [a] defendant's land in order to use his water" only "if the defendant is justly compensated for the taking" and "so long as [the plaintiff] does

not interfere with the rights and use of the defendant's water." *Dalton v. Wadley*, 355 P.2d 69, 72 (Utah 1960).[4]

¶23   In support of their MSJ, the Bartons argued that the Bresees were not entitled to an irrigation easement, because an easement in favor of the Bresees would interfere with the Bartons' own water use.[5] In particular, the Bartons argued that

---

4. In their opening brief, the Bresees also cite a related statute, Utah Code section 73-1-7, as providing a right for them to convey their shares of water through the Bartons' mainline. That section provides that a person may make use of another party's canal or ditch "to convey water for irrigation or any other beneficial purpose." Utah Code Ann. § 73-1-7(1) (LexisNexis 2012). This right is limited by the requirement that the canal or ditch to which a person seeks access can be "used without displacing current users or exceeding free board capacity." *Id.* But the Bresees did not refer to this statute in their complaint and only mentioned it in passing, without analysis, in their opposition to the Bartons' MSJ. Moreover, in its summary judgment ruling on the irrigation easement claim, the court did not mention this statute, and the Bresees did not raise it in their subsequent motion for a new trial. As a consequence, to the extent that the Bresees have attempted to argue on appeal that they are entitled to use any surplus capacity available in the Bartons' mainline under section 73-1-7, the contention is unpreserved and we do not address it further.

5. The Bartons also argued in their MSJ that section 73-1-6 "requires compensation be paid for any taking" and that "no compensation has either been paid, or proffered" by the Bresees. In their summary judgment opposition, the Bresees responded that once the court determined that they were entitled to a private condemnation, the "issue of value would then be litigated as a question of fact, to ultimately be determined by this Court with the requirement that the Bresees pay the Bartons the

(continued…)

an irrigation easement would cause considerable interference and harm to their water use and rights because there were insufficient water resources for both properties. They contended that the water actually available through reservoir shares was often limited, due to fluctuating reservoir levels resulting from unreliable precipitation, and that the reservoir supply was inadequate to irrigate their own property—let alone both the Barton and Bresee properties. And as a result of the limited availability of reservoir water, they regularly pumped water from the irrigation well on their property to subsidize their reservoir shares. To support this argument factually, the Bartons presented an affidavit, averring that they access both their reservoir shares and their irrigation well water through the main water line on their property; that they "regularly pump" water from the irrigation well located on their property to accommodate their "farming operation" due to insufficient water resources from reservoir shares; that the exchange-of-use agreements permitted the previous as well as the current owners of the Bresees' parcel to access "certain shares of water" they owned in exchange for the Bartons' "watering, use of, and farming of the northwestern section of" the Bresee parcel; and that in the course of each of the exchange-of-use agreements the Bartons "have had to pump water from their irrigation well to irrigate their farming operation and the northwestern section" of the Bresees' parcel due to the insufficient "water resources apart from the main water line." Accordingly, the Bartons argued that "no taking can occur" under section 73-1-6 of the Utah Code, because "[t]he Bresees' taking of an irrigation easement under the theory of eminent domain would result in extensive harm and interference with the Bartons' use of their irrigation well,

---

(…continued)
value of the property taken prior to having the right to condemn the property and assume ownership thereof." The district court did not reach this question below, and as neither party reargues the point on appeal, we do not address it further.

their main water line and access to their water shares in the Parowan Reservoir Company."

¶24   In their opposition, the Bresees claimed that there were disputes of material fact that precluded summary judgment. In support, they submitted an affidavit by Mr. Bresee. The Bresees did not dispute that the Bartons access both their reservoir shares and their well water through the main water line or that the Bartons regularly pump from the irrigation well on their property to subsidize their reservoir shares. The Bresees also did not dispute the terms of the exchange-of-use agreements between the Bartons and their predecessors in interest—namely, that the agreements provided the previous owners of the Bresee parcel access to their reservoir shares and that the Bartons were permitted to farm the northwestern portion of the Bresee parcel in exchange. The Bresees did, however, purport to dispute the Bartons' assertions that the Bartons have had to pump irrigation well water under the prior exchange-of-use agreements in order to irrigate both the Barton property and the northwestern portion of the Bresee property due to insufficient water resources. For example, the Bresees alleged that "[t]he water pumped was probably owned by the [owners of the Bresee parcel]. Further, it was pumped through the common water line in which the Bresees owned an interest."

¶25   However, the district court struck the averments in Mr. Bresee's affidavit to support the disputes related to ownership of the well, the well water, and the water line (including those identified above and others) because they "include[d] legal conclusions, lack[ed] foundation, or contain[ed] inadmissible hearsay." For example, Mr. Bresee averred that "some of [his] ground water shares are assigned to the well located" on the Barton property, that the water line "is held in common ownership by both the Bresees and the Bartons," and that he had a "vested right to access to the water line [and] irrigation well"—all of which the district court struck. Consequently, the asserted factual disputes that relied on these stricken averments for

support—in particular, the dispute about the Bartons' pumping of well water under the exchange-of-use-agreements to compensate for insufficient reservoir water—could not be considered for purposes of summary judgment. *See Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 50, 70 P.3d 904 ("An affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create an issue of fact." (citation and internal quotation marks omitted)); *Webster v. Sill*, 675 P.2d 1170, 1172 (Utah 1983) (explaining that "[t]he mere assertion that an issue of fact exists without a proper evidentiary foundation to support that assertion is insufficient to preclude the granting of a summary judgment motion"). The Bresees have not challenged the district court's decision to strike portions of Mr. Bresee's affidavit.

¶26 The Bresees also argued that the Bartons were not entitled to summary judgment on the irrigation easement claim as a matter of law. But in making their argument, they failed to address either the facts or arguments that the Bartons submitted to support their position—namely, that condemnation of an easement in favor of the Bresees would significantly interfere with the Bartons' ability to use their water rights to irrigate their own land. Instead, the Bresees argued broadly that the Bartons were not entitled to summary judgment on the irrigation easement claim because "there is a right as a matter of law for private eminent domain" under Utah Code section 73-1-6. They asserted that "[t]his alone precludes the grant of summary judgment in favor of the Bartons." And unlike the Bartons, the Bresees failed to discuss the pertinent facts (or their disputes with certain facts) relating to the Bartons' interference defense or demonstrate how the facts alleged by the Bartons failed to support the defense. Furthermore, in their post-ruling motion for a new trial, while the Bresees argued that a new summary judgment proceeding was warranted on the basis of insufficient evidence and errors of law under rule 59 of the Utah Rules of Civil Procedure, Utah R. Civ. P. 59(a)(6), (a)(7), they again failed to address the Bartons' interference argument, much less

identify particular facts that might have called the interference argument into question for purposes of summary judgment.

¶27 In ruling in the Bartons' favor, the district court determined that it was undisputed that the Bartons accessed both their reservoir shares and their well water through the main water line; that the Bartons "regularly pump" water from the irrigation well for their farming operation to compensate for insufficient reservoir water; and that, while the exchange-of-use agreements had provided the owners of the Bresee parcel access to their reservoir shares through the Bartons' mainline, in connection with each of the exchange-of-use agreements the Bartons have had to pump water from the irrigation well to subsidize the reservoir shares due to insufficient water resources.

¶28 Regarding the irrigation easement claim in particular, the district court determined that, although the Bresees had asserted a statutory right to condemn an irrigation easement in and over the Bartons' property, they failed to rebut the Bartons' evidence that such an easement would cause "considerable interference" with the Bartons' water use. The court noted the Bartons' contentions that they regularly pumped well water to subsidize their reservoir shares and that there were not sufficient water resources for irrigation of the Barton property, let alone for both properties. The court concluded that the Bresees' failure to respond to the "considerable interference" argument was essentially a "concession" that their eminent domain claim did not meet the requirements of the relevant statute and granted summary judgment in the Bartons' favor on that basis.

¶29 On appeal, the Bresees argue that summary judgment was improper on the irrigation easement claim because there were disputed material facts that should have precluded summary judgment on that claim. In particular, the Bresees argue that they "specifically disputed [the] facts" related to the considerable interference contention in their summary judgment

opposition, and that those disputes should have defeated summary judgment on the irrigation easement claim. They also argue that the Bartons' considerable interference contention should have failed because of certain undisputed evidence in the record—namely, the fact of the Bresees' own water shares ownership, which they claim could be accessed "without interfering with [the] Bartons' shares whatsoever," and the fact of the exchange-of-use agreements. They argue that "[t]he water cannot be sufficient for purposes of making an agreement, but insufficient if access is allowed by eminent domain or easement." We address each below.

1.      Factual Disputes

¶30    The Bresees claim on appeal that they specifically disputed facts related to the considerable interference contention below and that those factual disputes should have defeated summary judgment. Indeed, they argue that they disputed "each and every one of the eighty-five (85) paragraphs" of the MSJ and that the factual disputes "pertaining to the eminent domain claim rendered such a viable legal issue not subject to summary judgment." However, on appeal, the Bresees have failed to identify the specific factual disputes they raised below that were relevant to the considerable interference argument or to the eminent domain claim. For example, although they argue that the disputed facts "pertaining to the eminent domain claim rendered such a viable legal issue not subject to summary judgment," they do not identify the "specific facts" they "set forth" in opposition to show "that there [was] a genuine issue for trial," *see Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 (citation and internal quotation marks omitted), or attempt to analyze any particular disputes of fact from their summary judgment opposition in light of the irrigation easement claim. This failure places the burden on the appellate court to go through the record, identify the potentially relevant disputed facts, and make their arguments about those facts for the appellant. But an appellant may not "dump the burden of

argument and research" on the appellate court. *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (citation and internal quotation marks omitted); *see also Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762 ("An appellate court should not be asked to scour the record to save an appeal by remedying the deficiencies of an appellant's brief."). Rather, the Bresees have the burden to develop their arguments with "reasoned analysis" based on the pertinent portions of the record, but they have failed to do so. *Thomas*, 961 P.2d at 305.

¶31 Moreover, in the absence of focused assistance from the Bresees, we are left to make our own assessment of the proceedings below, and even a cursory review of the Bresees' summary judgment opposition and Mr. Bresee's affidavit suggests that the relevant factual disputes failed to establish a dispute of material fact, because the relevant evidence supporting those disputes—Mr. Bresee's averments—was stricken as inadmissible. For example, as noted above, the Bresees attempted to dispute the ownership of the well water by alleging that the water the Bartons pumped from the well under the exchange-of-use agreements was likely water shares owned by the owners of the Bresee parcel. Had there been evidence to support that allegation, it might have created a genuine dispute of material fact. After all, if the well water was truly the Bresees' reservoir water, then the fact that the Bartons had to pump from the well might not support the allegations regarding insufficient water resources and the Bartons' need to switch to well water to subsidize the reservoir shares. But the averments supporting that dispute were stricken. And on appeal the Bresees do not challenge the district court's decision to strike the pertinent portions of Mr. Bresee's affidavit, nor do they identify other relevant factual disputes that should have defeated summary judgment on the interference issue.

¶32 As a consequence, we are not persuaded that there were genuine disputes of material fact regarding the eminent domain claim that should have precluded summary judgment.

2.      Undisputed Facts

¶33   The Bresees also argue that the court failed to consider certain undisputed facts that they claim should have precluded summary judgment. For example, the Bresees point to the undisputed ownership of their reservoir shares, which they claim could be accessed "without interfering with [the] Bartons' shares whatsoever," and the implications of the exchange-of-use agreements. They argue that "[t]he water cannot be sufficient for purposes of making an agreement, but insufficient if access is allowed by eminent domain or easement." The Bresees contend that reasonable inferences from these facts rebutted the Bartons' claim of interference due to insufficient water resources. However, as the district court concluded, the Bresees did not at all address the considerable interference argument in their summary judgment opposition or in the motion for a new trial, and in particular, they did not argue to the district court that the facts they now point to on appeal should have rebutted the Bartons' interference argument.

¶34   "As a general rule, claims not raised before the [district] court may not be raised on appeal." *Oseguera v. State*, 2014 UT 31, ¶ 10, 322 P.3d 963 (alteration in original) (citation and internal quotation marks omitted). "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Id.* (alteration in original) (citation and internal quotation marks omitted). The preservation rule applies to "every claim, including constitutional questions, unless a [litigant] demonstrates that exceptional circumstances exist or plain error occurred." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (internal quotation marks omitted). The longstanding rule is that "[w]e will not address the merits of an argument that has not been preserved absent either plain error or exceptional circumstances," and we require the party "seek[ing] review of an unpreserved [issue] . . . [to] articulate an appropriate justification for appellate review." *Duke v. Graham*, 2007 UT 31, ¶ 28, 158 P.3d

540 (third alteration in original) (citations and internal quotation marks omitted) (declining to address an issue that had not been preserved and for which the appellant had not provided "justification for appellate review"). The Bresees have not done so. They do not assert that either plain error or other exceptional circumstances justify review of the merits of the arguments they failed to preserve below; indeed, they do not acknowledge their failure to preserve at all.

¶35    In any event, we are unpersuaded that the inferences the Bresees attempt to derive from the undisputed facts in the summary judgment record would have been obvious to the district court. *Cf. State v. Hare*, 2015 UT App 179, ¶ 9, 355 P.3d 1071 ("To prevail on a claim of plain error, the appellant must show obvious, prejudicial error."). The Bresees argue, for example, that the fact that they owned reservoir shares that would "compensate for [the Bresees'] extra usage" of water in irrigating their own land and the fact that the Bartons irrigated a portion of the Bresees' land under the historical exchange-of-use agreements calls into question the Bartons' arguments and averments that the water resources were insufficient for both properties. But without any input, written or oral, from the Bresees, it demanded too much from the district court to expect it to extract inferences to defeat the Bartons' considerable interference argument from the facts that the Bresees have identified on appeal. This is especially so in light of evidence that when the exchange-of-use agreements were in effect— agreements that provided access to the water shares of the previous owners of the Bresee parcel—the Bartons still had to pump water from the irrigation well on their property to subsidize the reservoir shares. In other words, it is not obvious that the Bresees' ownership of reservoir shares or the nature of the exchange-of-use agreements created an obvious inference that there was sufficient water for both properties or that an irrigation easement in favor of the Bresees would not interfere with the Bartons' ability to deal with the periodic water shortages on their farm.

¶36    Accordingly, we see no reason to disturb the district court's summary judgment ruling.

## II. The Motion to Amend

¶37    The Bresees next argue that the district court abused its discretion by denying their motion for leave to amend their complaint to add additional claims, including easement by necessity, easement by implication, trespass, negligence, and negligent and/or intentional infliction of emotional distress. The Bresees claim that the sole basis for the court's decision was that they filed their motion beyond the twenty-day deadline the court had set for filing amended pleadings and that the court abused its discretion by failing to address each of the three factors set out in *Kelly v. Hard Money Funding, Inc.*—timeliness, justification, and prejudice—to justify the denial. 2004 UT App 44, ¶ 26, 87 P.3d 734.

¶38    Rule 15(a) of the Utah Rules of Civil Procedure provides that once an answer has been filed, "a party may amend his [complaint] only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Utah Supreme Court has stated, "[District] courts should liberally allow amendments unless the amendments include untimely, unjustified, and prejudicial factors." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256. In *Kelly*, we noted that "Utah courts have focused on three factors" when "analyzing the grant or denial of a motion to amend"—"the timeliness of the motion; the justification given by the movant for the delay; and the resulting prejudice to the responding party." 2004 UT App 44, ¶ 26. However, in *Daniels*, the Utah Supreme Court held that "[t]rial courts are not required to find all three [*Kelly*] factors to deny a motion to amend" and noted that "many other factors, such as delay, bad faith, or futility of the amendment, may weigh against the [district] court's allowing amendment." *Daniels*, 2009 UT 66, ¶ 58 (citations and internal quotation marks omitted). In addition, we

have previously stated that a "district court retains the leeway to evaluate the factual circumstances and legal developments involved in each particular case, and a ruling on a motion to amend may be predicated on only one or two of the particular factors." *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 44, 351 P.3d 832 (citation and internal quotation marks omitted). Moreover, "the dimensions of liberality [in granting a motion to amend a complaint] are generally defined by the trial judge, who is best positioned to evaluate the motion to amend in the context of the scope and duration of the lawsuit." *Berkshires, LLC v Sykes*, 2005 UT App 536, ¶ 15, 127 P.3d 1243 (citation and internal quotation marks omitted).

¶39 Here, it is apparent that the district court thoroughly "evaluate[d] the factual circumstances and legal developments involved in [the] . . . case" before denying the motion to amend. *See Anderson*, 2015 UT App 134, ¶ 44 (citation and internal quotation marks omitted). In its analysis, the district court stated that it denied the motion to amend because it was "due 20 days after June 14, 2012" and the motion was "not filed until several months later and only after the Defendants had filed [the MSJ]." The court concluded that the motion to amend was therefore untimely. The Bresees characterize this ruling as denying the motion "solely because it was 'due 20 days after June 14, 2012' and [was] filed after that date." However, in its written decision, the district court extensively detailed the procedural history of the case in relation to the motion to amend, and it is clear that the decision to deny the motion was not as narrowly focused as the Bresees claim.

¶40 Indeed, the court's decision begins with its June 2012 order, which stated that "any amended pleadings or amendments to pleadings must be filed within 20 days of June 14, 2012," noting that "[n]either counsel voiced any objection" to that order. But the court went on to "evaluate the motion to amend in the context of the scope and duration of the lawsuit." *Berkshire*, 2005 UT App 536, ¶ 15 (citation and internal quotation

marks omitted). The court pointed out that the scheduling order required fact discovery to be completed by November 16, 2012, but that the Bresees had failed to even initiate discovery before that date or generally move their case forward.[6] The court noted that although the Bresees sent out written discovery requests to the Bartons in December 2012, after the fact discovery deadline, the court had granted the Bartons' motion for a protective order in January 2013, relieving them of any obligation to respond to the Bresees' late discovery requests.

¶41    The district court also focused on the timing of the Bresees' motion to amend their complaint. For example, it noted that the Bresees had filed the motion on December 7, 2012—almost three months after the Bartons' MSJ and "after briefing on the [MSJ] had been completed." On that same day, the Bresees also filed a motion to amend the scheduling order to extend the discovery timeline, which the Bartons objected to on the basis of the pending MSJ. The Bartons' MSJ was granted at a hearing in February 2013, and the written order was entered in May. In the meantime, although the Bartons had not filed a response to the Bresees' motion to amend the complaint, the Bresees' counsel never filed a notice to submit the motion for decision and did not bring it up again until a November 2013 hearing on the Bartons' request for a jury trial on their counterclaims and on the issue of entitlement to attorney fees.

¶42    Thus, the Bresees allowed both their motion to amend the complaint and their motion to amend the scheduling order to languish for nearly a year before they brought them to the district court's attention. And by that time, the court's grant of the Bartons' MSJ was eleven months in the past and the trial on the Bartons' counterclaims was only one month away. Moreover,

---

6. For example, the Bresees admitted in their motion to amend the scheduling order, discussed below, *see infra* ¶¶ 41–42, that as of December 7, 2012, no discovery had been conducted.

the Bresees provide no substantive justification for their delay in prosecuting the motion to amend the complaint. They simply assert that they had no dilatory motive, bad faith, or improper purpose and that, instead, the delay was due to their "minimal knowledge at the time the Complaint was filed." But this suggests that they had a strong incentive to act with more diligence to gather needed information. The assertion thus supports, rather than undermines, the district court's decision to deny the motion to amend. The Bresees also contend that the Bartons caused the delay by objecting to the motion solely on the basis of the pending MSJ and not following up with a formal response until the district court instructed them to do so at the November 2013 hearing. But the Bresees made no attempt to submit the motion to amend to the district court for decision, even though they could have done so as soon as the time for the Bartons' response had passed. *See* Utah R. Civ. P. 7(g) ("When briefing is complete or the time for briefing has expired, either party may file a 'Request to Submit for Decision,' but, if no party files a request, the motion will not be submitted for decision."); *cf. Brown v. Glover*, 2000 UT 89, ¶¶ 29, 32, 37, 16 P.3d 540 (explaining that "the burden is on the discovering party to be diligent in using the available procedures to obtain discovery" and holding that it was not improper for the district court to deny a Utah Rules of Civil Procedure 56(f) motion to extend discovery where the appellant's counsel acted without "reasonable diligence" and the motion was therefore "dilatory [and] lacking merit" (citation and internal quotation marks omitted)).

¶43 Finally, implicit in the district court's decision is the notion that granting the motion to amend the complaint would result in prejudice to the Bartons at a point in the case where the discovery phase had long since been concluded, a dispositive motion dismissing all the Bresees' original claims had been decided months before, and the Bartons' counterclaim and request for bad-faith attorney fees were on the eve of trial. The Bresees' assertion that had the motion been granted the Bartons

still would have had "several months to prepare for trial" oversimplifies the circumstances on which the court based its decision.

¶44     In sum, the district court's decision to deny the motion to amend was based on a thorough consideration of the procedural history and status of the case and well within its discretion. *See Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 44, 351 P.3d 832 (noting that "[t]he district court has discretion to grant or deny a motion to amend a complaint" and in considering a motion to amend, "the district court retains the leeway to evaluate the factual circumstances and legal developments involved in each particular case." (citation and internal quotation marks omitted)). Accordingly, we affirm the district court's denial of the Bresees' motion to amend their complaint.

## III. Bad-Faith Attorney Fees

¶45     Finally, the Bresees contend that the "[district] court erred in finding bad faith in awarding attorney fees on the Bresees' claims." The Utah Code requires a district court to award attorney fees in civil actions to the prevailing party "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012); *see also Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 7, 122 P.3d 556 ("In order to award attorney fees under the [bad-faith statute], a [district] court must determine *both* that the losing party's action or defense was without merit *and* that it was brought or asserted in bad faith." (internal quotation marks omitted)). "A claim is without merit if it is frivolous, is of little weight or importance having no basis in law or fact, or clearly [lacks a] legal basis for recovery." *Utah Telecomms. Open Infrastructure Agency v. Hogan*, 2013 UT App 8, ¶ 14, 294 P.3d 645 (alteration in original) (citation and internal quotation marks omitted). But "the mere fact that an action is meritless does not necessarily mean that the

action is also brought in bad faith." *In re Sonnenreich*, 2004 UT 3, ¶ 49, 86 P.3d 712. Rather, bad faith "turns on a factual determination of a party's subjective intent" and requires the district court to find that "one or more of [the following] factors is lacking": "(1) [a]n honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Still Standing Stable*, 2005 UT 46, ¶¶ 9, 12 (second alteration in original) (citation and internal quotation marks omitted).

¶46    Here, the district court conducted a bench trial in January 2014, well after the MSJ had been decided, to resolve the Bartons' counterclaims as well as the Bartons' request for attorney fees. At the conclusion of the bench trial, the court determined that the Bresees' claims were "without merit" because they "clearly [lacked a] legal basis for recovery." (Quoting *Utah Telecomms.*, 2013 UT App 8, ¶ 14.) The court also found that the claims were "asserted in bad faith." In particular, the court found that the Bresees "did not have '[a]n honest belief in the propriety of' instituting this litigation against [the Bartons]," and accordingly awarded the Bartons "reasonable attorney fees incurred to defend against [the Bresees'] claims, incurred as of the date of entry of the court's ruling on [the MSJ]." (Quoting *Still Standing Stable*, 2005 UT 46, ¶ 12.)

¶47    The Bresees contend that there was insufficient support for the district court's determination that the eminent domain claim was without merit and that the suit was brought in bad faith.[7] In particular, they contend that their statutory claim

---

7. The Bresees do not appear to challenge the district court's determination that the other claims in their complaint were without merit, though they do contest the court's finding that they were brought in bad faith. Indeed, the entire analysis in

(continued…)

seeking to condemn an irrigation easement, at least, was meritorious even if not successful below. And with respect to bad faith, they argue that the focus of an "honest belief" must be whether there has been any "obvious untruthfulness [demonstrated] by a party," and contend that none of the court's findings supporting its bad-faith determination demonstrate that they lacked an honest, subjective belief in instituting the litigation against the Bartons. We address each contention below.

A.     Without Merit

¶48     The Bresees assert that their complaint was not entirely without merit because their eminent domain claim, at least, was viable. As evidence, they direct us to their argument regarding the impropriety of the district court's summary judgment decision on that claim, but they do not challenge any of the findings of fact supporting the district court's bad-faith attorney fees conclusion. Whether a claim is meritorious is a question of law that we review for correctness. *Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct. App. 1991). However, we must accept the district court's underlying findings of fact as true and analyze the

---

(…continued)

their opening brief regarding merit appears to be focused on the eminent domain claim, and there is no analysis regarding the potential merit of the other claims in their complaint. An issue is inadequately briefed if it "lacks sufficient development of the argument and citation to legal authority" or if the argument is "largely incoherent." *Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 32, 241 P.3d 375 (citation and internal quotation marks omitted). Thus, to the extent that the Bresees may have intended to challenge the court's conclusion that their other claims lacked merit, we cannot discern that argument. In that event, the issue has been inadequately briefed, and we do not address it further.

Bresees' challenge accordingly. *See Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 23, 310 P.3d 747.

¶49    The Bresees are correct the Utah Code provides a legal mechanism for a party to establish a right to condemn another's property in order to convey water for irrigation purposes. Utah Code Ann. § 73-1-6 (LexisNexis 2012). However, the bare existence of a basis in law for a potential claim is not sufficient to make a claim meritorious. Rather, there must also be a factual basis for a party's claims apart from a statutory provision that provides a theoretical "basis in law" for those claims. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998) (plurality opinion) (concluding in the context of a claim for bad-faith attorney fees that a party's claims were meritless in circumstances where "[a]lthough the [claimant's] claims may have had some basis in law and [the claimant] ostensibly provided evidence of their factual claims, . . . the facts [were found] to be contrary to that evidence"); *see also Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 31, 347 P.3d 394 (concluding that a party's claim lacked merit for purposes of the bad-faith attorney fees statute where "there was no factual basis upon which" the claimant could support his claim).

¶50    Here, the relevant statute expressly states that the use of eminent domain to acquire an irrigation easement may not "be exercised in a manner . . . to impair the practical use of any other right of way . . . or to injure any public or private property." Utah Code Ann. § 73-1-6. Our supreme court has interpreted this statute to require that a claimant may "acquire a right-of-way across the defendant's land in order to use his water" only "so long as [the claimant] does not interfere with the rights and use of the defendant's water." *Dalton v. Wadley*, 355 P.2d 69, 72 (Utah 1960). In other words, even cursory research into the requirements of establishing an irrigation easement through eminent domain would have informed the Bresees that the bare existence of the right in law was not sufficient to establish their own right to condemn an easement across the Bartons' land.

Rather, there is the additional element of interference that must be acknowledged and dealt with before a claimant becomes entitled to condemn.

¶51    And importantly, there is no indication that the Bresees made any attempt to ascertain whether their condemnation of an irrigation easement over the Bartons' property would interfere with the Bartons' own water rights and use. Instead, approximately three weeks before they filed their complaint, the Bresees took it upon themselves to trench through the Bartons' land and breach their mainline without the Bartons' permission or establishing that they had a right to do so. And as noted above, at no time during the proceedings did the Bresees conduct discovery to further develop the factual basis of their claims. Indeed, they did not attempt to serve their initial discovery requests until after the fact discovery deadline had passed.

¶52    Further, as discussed above, the district court granted the Bartons' MSJ on the eminent domain claim due to the Bresees' failure to address the issue of considerable interference, a decision we have affirmed. Thus, because the Bresees were required to demonstrate that their claimed entitlement to an irrigation easement would not interfere with the Bartons' water use and did not even attempt to do so below, the Bresees failed to provide the district court with the factual basis necessary to support their claim to an irrigation easement over the Bartons' property. *Cf. Migliore*, 2015 UT 9, ¶ 31; *Valcarce*, 961 P.2d at 305 (plurality).

¶53    This is not a case where the Bresees merely asserted an "unenforceable" eminent domain claim, as they contend. Rather, under the unique circumstances here, the record supports a conclusion that the Bresees made no effort before or after instigating litigation to ascertain or establish the factual basis for asserting such a claim. Accordingly, because "there was no factual basis" to support an important element of the Bresees'

statutory claim, we conclude that the district court did not err in determining that the Bresees' eminent domain claim lacked merit for purposes of the bad-faith attorney fees statute. *See Utah Telecomms. Open Infrastructure Agency v. Hogan*, 2013 UT App 8, ¶ 14, 294 P.3d 645 (explaining that a claim is without merit if it "clearly [lacks a] legal basis for recovery" (alteration in original) (citation and internal quotation marks omitted)).

B.      Bad Faith

¶54    "A finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard." *Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct. App. 1991). Here, the district court found at the conclusion of the bench trial that the Bresees "did not have '[a]n honest belief in the propriety' of instituting this litigation against [the Bartons]." (Quoting *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 12, 122 P.3d 556.) Accordingly, it awarded the Bartons their "reasonable attorney fees incurred to defend against [the Bresees'] claims, incurred as of the date of entry of the court's ruling on [the MSJ]."

¶55    The Bresees argue that "[t]here is no factual support" for the district court's bad-faith finding. In particular, they contend that the district court's factual findings do not support its bad-faith determination where the district court's order "only indicates how [their] claims failed." They also contend the Bartons never presented evidence that the Bresees had been "obviously untruthful" in regards to bringing their case. The Bresees argue that they "reasonably" and "honestly believed the allegations and causes of action"—specifically, the quiet title and the eminent domain irrigation easement claims.

¶56    A trial court's finding of bad faith may be upheld despite a party's claim that he or she held a subjectively reasonable or honest belief in the propriety of the claims and defenses that the party raised during the course of a case. *See, e.g., Gallegos v. Lloyd*, 2008 UT App 40, ¶¶ 15–17, 178 P.3d 922 (affirming the district court's finding that the defendant "lacked an honest

belief in the propriety" of the litigation as "sufficient to support [a bad-faith] finding" where the district court found that his testimony was "totally without credibility"). For example, we have affirmed a district court's finding of bad faith despite the fact the appellant claimed she "had a subjective belief in the propriety of her claims," where the district court determined the appellant "could not have had an 'honest belief in the propriety' of her lawsuit," given "the record evidence—including some of [the appellant's] own testimony" in the case. *See Blum v. Dahl*, 2012 UT App 198, ¶ 12, 283 P.3d 963 (citation omitted).

¶57 The Bresees fail to persuade us that the district court's bad-faith finding was clearly erroneous. First, although the Bresees have argued that the district court's findings of fact do not support the its bad-faith determination, they fail to challenge—or even acknowledge, for the most part—the many factual findings the district court made that specifically implicate the question of bad faith—in particular, the court's findings about what the Bresees knew, or should have known, prior to instigating this lawsuit. Consequently, we accept the factual findings in the counterclaim order as true. *See Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 23, 310 P.3d 747.

¶58 Second, by neglecting the court's findings, the Bresees necessarily fail to adequately call into question the factual basis for the district court's ultimate bad-faith determination. *Cf. State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645 (explaining that, with regard to the marshaling requirement, "a party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review that applies to such issues"); *Wayment v. Howard*, 2006 UT 56, ¶ 17, 144 P.3d 1147 (presuming that the evidence presented supported the district court's factual findings where the appellant "failed to marshal any of the supporting evidence"). And the district court's detailed factual findings amply support its finding that the Bresees could not have had an honest belief in the propriety of instituting this litigation.

¶59 With respect to their claim of an easement by eminent domain, the Bresees alleged in their complaint that the Bartons had prevented them from using their water shares "by asserting that the [mainline] pipes belong to [the Bartons]" and had threatened the Bresees if they "accesse[d] the easements on the Barton Parcel for the purpose of using water." The Bresees stated that they "hereby assert their access to their irrigation water and easements" and that they were seeking "damages for the removal of their irrigation equipment" as well as an order from the court to force the Bartons "to replace the 'T' joint" that the Bartons had removed after the Bresees' incursion. In other words, the Bresees alleged from the beginning of this litigation that they already owned the easement they sought to condemn over the Bartons' property and in their mainline and sought damages for the Bartons' response to the Bresees' "self-help" water diversion installation. But the district court concluded that there was no reasonable basis in fact for such assertions. The court found that the Bresees' predecessors in interest did not "receive any recorded easement or other written right to use [the] Barton[s'] pipe for delivery of water" and that they "had no rights to use of the water delivery system located on [the Bartons'] property except as they might acquire through agreement with [the Bartons]." The district court also found that prior to the Bresees' acquisition of their property, they visited the property and were "informed by [the Bartons] that there were no water rights associated with [the parcel]." It found that although the Bresees acquired eleven shares in the Parowan Reservoir Company in 2010, at that time they "did not acquire any recorded easement or other written right to delivery of the water . . . and specifically did not acquire or obtain any easement or right to use [the Bartons'] water line," and that "[a]side from [the exchange-of-use agreement]," which was "rescinded by the parties before the 2012 irrigation season," "[the Bresees] had no other right to delivery of any water through [the Bartons'] irrigation mainline." And notwithstanding the absence of any factual or legal basis for doing so, the district court found that Mr. Bresee entered the Bartons' land in April 2012 "without any

prior permission," dug a trench, and installed the T-connection on the Bartons' irrigation mainline, which the Bartons then removed at their own expense.

¶60   Indeed, during the counterclaims trial, Mr. Bresee testified that at the time he initiated the litigation, he had no empirical evidence to support his own "common sense" belief that he had rights to use the Bartons' property for water transport. He further testified that although he believed that he had a right to "excavate[] [the Bartons'] mainline to tap into it," he also knew that neither his deed nor his title insurance included language indicating that he had an interest in the mainline. In fact, Mr. Bresee conceded that there were no "legal documents" demonstrating that he held common ownership in the water line with the Bartons. But nonetheless, he made no effort to contact anyone to determine his legal rights related to the water line prior to trenching the Bartons' property and hooking into their mainline, because he "didn't think it was necessary." Mr. Bresee also testified that he was aware that the only easement granted on his deed was for the fifty-foot ingress/egress easement. And although he asserted his belief "that [his] deed and the subsequent deeds in [his] chain of title grant[ed] [him] an appurtenance and improvement" related to the mainline, when pressed he acknowledged that the reason he "thought he had a common ownership interest in the water line" was "[b]ecause it only makes sense" according to his own interpretation of how law generally works.

¶61   Thus, taken as a whole, the court's factual findings support a conclusion that when the Bresees instigated this litigation, they had no supportable basis to assert that they held a common ownership with the Bartons in the pipeline, that they had an easement to use the Bartons' pipeline, or that they were entitled to access their water shares through the pipeline—all of which were allegations they made to support their eminent domain claim in their complaint and in their opposition to summary judgment. In other words, the district court's factual

findings support its determination that, under the circumstances when they initiated the litigation, the Bresees "could not have had an honest belief" that they had any legal entitlement to ownership or use of the Bartons' pipeline or for pursuing litigation for the same. *See Blum v. Dahl*, 2012 UT App 198, ¶ 12, 283 P.3d 963 (citation and internal quotation marks omitted).

¶62　As to the quiet title claim, the Bresees asserted in their complaint a right to possess an approximately nine-foot strip of land along the western border of their property. They alleged that although they initially thought the strip of land was theirs when they purchased the property, they learned in 2010 that the strip actually belonged to the Bartons. Nonetheless, the Bresees claimed that they "desire[d] to possess the narrow strip . . . as a wind break and shade," and they asserted an entitlement to do so under theories of adverse possession and boundary by acquiescence. *See* Utah Code Ann. § 78B-2-214 (LexisNexis 2012) (describing requirements for adverse possession, among which is that the party desiring possession must have "paid all taxes which have been levied and assessed upon the land according to law"); *Staker v. Ainsworth*, 785 P.2d 417, 420 (Utah 1990) (describing the elements of boundary by acquiescence, which, among other things, requires the acquiesced-to boundary to have been in place for "a long period of time," which the supreme court has interpreted as usually requiring no "less than twenty years"). The Bresees specifically claimed that they had "paid taxes on the said Quiet Title Property by virtue of the county assessment" and asserted that the Bartons had "failed to exercise [their] rights to secure said property."

¶63　However, at the conclusion of the counterclaims trial, the district court found that the Bresees had never paid any taxes on the strip of land, despite their assertion that they had. In fact, during the counterclaims trial, Mr. Bresee testified that although he realized in 2010 that the boundary of his property did not include the nine-foot strip of land, he nonetheless had previously represented to the court through affidavit that he

thought the land was his and had also stated that he had paid taxes on that strip of land even though he later admitted that he had not and had never contacted the county to verify the tax status of the parcel he claimed. The court also found that "even a cursory examination of the chain of title to that property would have informed [the Bresees] that [their parcel of land] had been severed from [the Bartons'] parcel in 2001," which disqualified them from a viable boundary-by-acquiescence claim because the asserted boundary had to have been acknowledged for at least twenty years. *See Staker*, 785 P.2d at 420. Thus, the court's factual findings support its conclusion that the Bresees could not have had an honest belief in the validity of their quiet title claim.

¶64  In sum, the district court's findings of fact support its conclusion that the Bresees' claims were without merit and brought in bad faith. Accordingly, we will not disturb the district court's conclusion that the Bartons were entitled to an award of attorney fees under Utah Code section 78B-5-825.

## IV. Attorney Fees on Appeal

¶65  The Bartons request an award of attorney fees related to this appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. Rule 33(a) provides that "if the court determines that a[n] . . . appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include . . . reasonable attorney fees, to the prevailing party." The Bartons also request attorney fees on the basis that they were the prevailing party below and have prevailed on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (plurality opinion) (explaining that "when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal"). The district court awarded the Bartons attorney fees incurred "to defend against [the Bresees'] claims, incurred as of the date of entry of the court's ruling on [the MSJ]." However, the district court also found that "the parties each prevailed on issues raised in the [the Bartons']

Counterclaim" and, accordingly, awarded "no attorney fees" for work related to the counterclaim.

¶66    We award the Bartons their fees incurred for defending the MSJ on appeal because they were awarded fees under the bad-faith attorney fee statute on that issue below and have prevailed on that issue on appeal. *See id.* We also award the Bartons the attorney fees they incurred on appeal in successfully defending their award of fees below. *See Warner v. Warner*, 2014 UT App 16, ¶¶ 62–63, 319 P.3d 711; *see also Livingston Fin., LLC v. Migliore*, 2013 UT App 58, ¶ 11, 299 P.3d 620 (per curiam) (awarding the prevailing party attorney fees incurred on appeal in defending the district court's award of bad-faith attorney fees), *aff'd*, 2015 UT 9, 347 P.3d 394; *Dantine v. Shores*, 2011 UT App 392, ¶¶ 6–7, 266 P.3d 188 (per curiam) (affirming the district court's award of bad-faith attorney fees below and awarding attorney fees on that basis to the prevailing party on appeal).

¶67    The only remaining question is whether to award the Bartons attorney fees under rule 33 on the issue of the district court's denial of the Bresees' motion to amend. The district court limited its bad-faith fee award to the fees the Bartons had incurred as of the date of the MSJ ruling, which was entered in May 2013. The motion to amend was not decided until January 2014 and had not been significantly prosecuted or defended prior to November 2013, when the Bresees raised it again. Thus, because the Bartons were not awarded attorney fees for this issue below, there is no basis for an award of fees on appeal, except under rule 33. Although the Bartons have prevailed, we conclude that the Bresees' appeal of the court's denial of their motion to amend was not frivolous. "[W]e have the authority to award attorney fees and costs as a sanction for a frivolous appeal[,] . . . [but] such a sanction is a serious matter and only to be used in egregious cases . . . ." *See Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. The Bresees' arguments on appeal on this issue have presented at least a plausible basis in fact and law. *See N.F. v. G.F.*, 2013 UT App 281, ¶ 18, 316 P.3d 944 (noting that a

case is not frivolous when "the [party] makes good-faith arguments that are adequately supported by case law," even if "at times, [a party] arguably stretches certain facts to cast them in a more favorable light" (alterations in original) (citations and internal quotation marks omitted)). And although the Bartons allege that the Bresees have employed dilatory and improper tactics in pursuing this appeal, we decline to award fees on this specific issue based upon general allegations of improper tactics.

¶68 Accordingly, we remand to the district court for the narrow issue of determining the amount of fees that the Bartons reasonably incurred in defending the MSJ and the bad-faith attorney fees award in this appeal. Otherwise, the parties will bear their own attorney fees incurred on appeal.

CONCLUSION

¶69 We affirm the district court's decisions in all respects, and remand the case for the sole purpose of determining the reasonable fees incurred by the Bartons in defending the MSJ and the bad-faith attorney fees award on appeal.

————————

ORME, Judge (concurring in part and dissenting in part):

¶70 I concur in the court's opinion—with one exception. In paragraph 34 of the lead opinion, my colleagues ably explain that appellants have not preserved for appellate review the issues identified in paragraph 33. They point out that we will not consider on appeal issues that have not been preserved, absent a demonstration of plain error or other exceptional circumstances. And they correctly conclude that the Bresees have not raised, much less have they properly briefed, a claim that the issues should nonetheless be considered under either doctrine. In my view, our discussion of these issues should end there. Instead, my colleagues go on to consider a plain error argument that the

Bresees did not make and conclude that there was no plain error. That is, they conclude that even if there was error, it would not have been obvious to the trial court.

¶71   It may seem that I am fussing about nothing terribly important. It is, after all, only one paragraph out of sixty-nine, and my disagreement does not affect the outcome.

¶72   My concern, however, is an important institutional one. We undercut our longstanding insistence about the importance of preserving issues for appeal,[8] and our resolve to resort to the plain error doctrine only when it has been raised and briefed in timely and adequate fashion,[9] if we will nonetheless go ahead

---

8. *See, e.g.*, *State v. Larrabee*, 2013 UT 70, ¶ 15, 321 P.3d 1136 (discussing the importance of the preservation doctrine); *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (same); *State v. Lorenzo*, 2015 UT App 189, ¶ 11, 358 P.3d 330 (same).

9. *See, e.g.*, Utah R. App. P. 24(a)(5)(A) ("The brief of the appellant shall contain . . . citation to the record showing that the issue was preserved in the trial court[.]"); *State v. Blubaugh*, 904 P.2d 688, 700–01 (Utah Ct. App. 1995) (declining to consider exceptional circumstances and plain error when the appellant has not raised them); *State v. Stevenson*, 884 P.2d 1287, 1292 n.8 (Utah Ct. App. 1994) (same); *State v. Sepulveda*, 842 P.2d 913, 917–18 (Utah Ct. App. 1992) (same). *See also* Utah R. App. P. 24(a)(9) (requiring appellant's brief to "includ[e] the grounds for reviewing any issue not preserved in the trial court"); *State v. Howell*, 2016 UT App 90, ¶ 4, 374 P.3d 1032 ("[W]e have consistently refused to consider arguments of plain error raised for the first time in an appellant's reply brief.") (alteration in original) (citation and internal quotation marks omitted); *State v. Robinson*, 2014 UT App 114, ¶ 12, 327 P.3d 589 ("[A] plain error argument presented for the first time in a reply brief is beyond our reach.").

and consider, on our own initiative, the possibility that plain error might have occurred.[10] For that reason, I dissent from paragraph 35.

───────────

10. I recognize that this is not the first time the court has given in to the temptation to consider a plain error or exceptional circumstances argument that should have been deemed foreclosed. *See, e.g.*, *Berkshires, LLC v. Sykes*, 2005 UT App 536, ¶ 21, 127 P.3d 1243; *State v. Gooch*, 2000 UT App 374U, paras. 4–5. At least in *Gooch*, a twelve-paragraph memorandum decision not designated for publication, there would have been nothing to talk about had the court not dealt with the three arguments that were waived. *See* 2000 UT App 374U, paras. 4, 7, 10. The same, obviously, cannot be said here.